FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jul 29, 2019

SEAN F. MCAVOY, CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

MICHAEL W.,[1]

          Plaintiff,

   vs.

ANDREW M. SAUL,
COMMISSIONER OF SOCIAL
SECURITY,[2]

          Defendant.

No. 1:18-cv-03211-MKD

ORDER DENYING PLAINTIFF'S
MOTION FOR SUMMARY
JUDGMENT AND GRANTING
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT

ECF Nos. 14, 16

Before the Court are the parties' cross-motions for summary judgment. ECF
Nos. 14, 16. The parties consented to proceed before a magistrate judge. ECF No.

---

[1] To protect the privacy of plaintiffs in social security cases, the undersigned
identifies them only by their first names and the initial of their last names.

[2] Andrew M. Saul is now the Commissioner of the Social Security Administration.
Accordingly, the Court substitutes Andrew M. Saul as the Defendant and directs
the Clerk to update the docket sheet. *See* Fed. R. Civ. P. 25(d).

ORDER - 1

6. The Court, having reviewed the administrative record and the parties' briefing, is fully informed. For the reasons discussed below, the Court denies Plaintiff's Motion, ECF No. 14, and grants Defendant's Motion, ECF No. 16.

## JURISDICTION

The Court has jurisdiction over this case pursuant to 42 U.S.C. §§ 405(g); 1383(c)(3).

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152,

1156 (9th Cir. 2001). If the evidence in the record "is susceptible to more than one

rational interpretation, [the court] must uphold the ALJ's findings if they are

supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674

F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an

ALJ's decision on account of an error that is harmless." *Id.* An error is harmless

"where it is inconsequential to the [ALJ's] ultimate nondisability determination."

*Id*. at 1115 (quotation and citation omitted). The party appealing the ALJ's

decision generally bears the burden of establishing that it was harmed. *Shinseki v.*

*Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within

the meaning of the Social Security Act. First, the claimant must be "unable to

engage in any substantial gainful activity by reason of any medically determinable

physical or mental impairment which can be expected to result in death or which

has lasted or can be expected to last for a continuous period of not less than twelve

months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Second, the claimant's

impairment must be "of such severity that he is not only unable to do his previous

work[,] but cannot, considering his age, education, and work experience, engage in

any other kind of substantial gainful work which exists in the national economy."

42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(b), 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment is as severe or more

ORDER - 4

severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age,

education, and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v),

416.920(a)(4)(v). If the claimant is capable of adjusting to other work, the

Commissioner must find that the claimant is not disabled. 20 C.F.R. §§

404.1520(g)(1), 416.920(g)(1). If the claimant is not capable of adjusting to other

work, analysis concludes with a finding that the claimant is disabled and is

therefore entitled to benefits. 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

The claimant bears the burden of proof at steps one through four above.

*Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to

step five, the burden shifts to the Commissioner to establish that 1) the claimant is

capable of performing other work; and 2) such work "exists in significant numbers

in the national economy." 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2); *Beltran v.*

*Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

On February 9, 2015, Plaintiff filed an application for disability insurance

benefits. Tr. 181-82. On May 28, 2015, Plaintiff protectively filed an application

for supplemental security income benefits. Tr. 183-88. Both applications alleged a

disability onset date of July 31, 2013. Tr. 183. The applications were denied

initially, Tr. 109-15, and on reconsideration, Tr. 117-121. Plaintiff appeared at a

hearing before an administrative law judge (ALJ) on May 25, 2017. Tr. 38-78. On

December 18, 2017, the ALJ denied Plaintiff's claim. Tr. 14-33.

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since July 31, 2013, the alleged onset date.  Tr. 19.  At step two, the ALJ found Plaintiff had the following severe impairments: chronic obstructive pulmonary disease (COPD), hearing loss correctible with hearing aid, degenerative disc disease, depression, anxiety, and a learning disorder.  *Id.*  At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment.  Tr. 20.  The ALJ then found Plaintiff had the RFC to perform light work with the following limitations:

> [Plaintiff] can occasionally climb, and can frequently stoop, kneel, crouch and crawl.  He can frequently reach overhead, and can frequently handle, finger and feel.  He can perform work in which concentrated exposure to respiratory irritants is not present.  Until recommended hearing aids are acquired and used, [Plaintiff] can perform work in which hearing is required no more tha[n] occasionally and in which hazards are not present.  In order to meet ordinary and reasonable employer expectations regarding attendance, production and work place behavior, [Plaintiff] can understand, remember and carry out unskilled, routine and repetitive work that can be learned by demonstration, and in which tasks to be performed are predetermined by the employer.  He can cope with occasional work setting change and occasional interaction with supervisors.  He can work in proximity to coworkers, but not in a team or cooperative effort.  He can perform work that does not require interaction with the general public as an essential element of the job, but occasional incidental contact with the general public is not precluded.

Tr. 22.

At step four, the ALJ found Plaintiff was unable to perform past relevant work.  Tr. 27.  At step five, the ALJ found that, considering Plaintiff's age,

ORDER - 7

education, work experience, RFC, and testimony from a vocational expert, there were other jobs that existed in significant numbers in the national economy that Plaintiff could perform, such as cleaner housekeeping, marker, and production assembler. Tr. 28. The ALJ concluded Plaintiff was not under a disability, as defined in the Social Security Act, from July 31, 2013 through December 18, 2017, the date of the ALJ's decision. Tr. 29.

On August 31, 2018, the Appeals Council denied review, Tr. 1-6, making the ALJ's decision the Commissioner's final decision for purposes of judicial review. *See* 42 U.S.C. § 1383(c)(3).

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying him disability insurance benefits under Title II and supplemental security income benefits under Title XVI of the Social Security Act. Plaintiff raises the following issues for this Court's review:

1. Whether the ALJ properly evaluated Plaintiff's symptom testimony;

2. Whether the ALJ properly evaluated lay witness evidence; and

3. Whether the ALJ properly considered the medical opinion evidence.

ECF No. 14 at 1.

# DISCUSSION

## A. Plaintiff's Symptom Testimony

Plaintiff contends the ALJ failed to rely on clear and convincing reasons to discount his symptom testimony. ECF No. 14 at 3-12.

An ALJ engages in a two-step analysis to determine whether to discount a claimant's testimony regarding subjective symptoms. SSR 16-3p, 2016 WL 1119029, at *2. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina*, 674 F.3d at 1112 (quotation marks omitted). "The claimant is not required to show that [the claimant's] impairment could reasonably be expected to cause the severity of the symptom [the claimant] has alleged; [the claimant] need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citations omitted). General findings are insufficient; rather, the ALJ must identify what symptom claims are being discounted and what evidence undermines these claims.

*Id.* (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (requiring the ALJ to sufficiently explain why it discounted claimant's symptom claims). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

Factors to be considered in evaluating the intensity, persistence, and limiting effects of a claimant's symptoms include: 1) daily activities; 2) the location, duration, frequency, and intensity of pain or other symptoms; 3) factors that precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; 5) treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; 6) any measures other than treatment an individual uses or has used to relieve pain or other symptoms; and 7) any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms. SSR 16-3p, 2016 WL 1119029, at *7; 20 C.F.R. §§ 404.1529(c), 416.929(c). The ALJ is instructed to "consider all of the evidence in an individual's record," "to determine how symptoms limit ability to perform work-related activities." SSR 16-3p, 2016 WL 1119029, at *2.

The ALJ found that Plaintiff's impairments could reasonably be expected to cause the alleged symptoms; however, Plaintiff's statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the evidence.  Tr. 23.

### 1.  Failure to Follow Treatment Recommendations

The ALJ found Plaintiff's symptom testimony was inconsistent with his failure to follow treatment recommendations.  Tr. 24.  "[I]n order to get benefits, an individual must follow treatment prescribed by his or her physician if the treatment can restore the ability to work, unless the individual has an acceptable reason for failing to follow the prescribed treatment."  *Orn v. Astrue*, 495 F.3d 625, 636-37 (9th Cir. 2007).  "A claimant's subjective symptom testimony may be undermined by an unexplained, or inadequately explained, failure to . . . follow a prescribed course of treatment."  *Trevizo v. Berryhill*, 871 F.3d 664, 679 (9th Cir. 2017) (citations omitted).  Social Security Ruling 16-3p instructs that an ALJ "will not find an individual's symptoms inconsistent with the evidence in the record on this basis without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints."  SSR 16-3p, 2016 WL 1119029, at *8.  Acceptable reasons for failing to follow prescribed treatment include the treatment being contrary to the claimant's religion, the fact that similar treatment has been tried in the past with unsuccessful

results, the recommended treatment being of great magnitude or unusual nature, or that the treatment would involve amputation of an extremity.  20 C.F.R. §§ 404.1530, 416.930.

Here, the ALJ noted that Plaintiff was repeatedly counseled to obtain hearing aids to correct his hearing impairment.  Tr. 24; *see* Tr. 295 (January 15, 2015: hearing aid amplification recommended by treating ENT specialist); Tr. 330 (February 9, 2016: treating ENT specialist opined bilateral hearing aids would be "the best solution for his hearing" and "had a long discussion about the need for amplification" with Plaintiff).  Plaintiff declined to obtain hearing aids because he feared they would cause further damage to his ears.  Tr. 43, 55, 314.  The ALJ considered this reason but found there was no basis in the record to support Plaintiff's fear.  Tr. 24.  Plaintiff speculates that his unsubstantiated fear of further damage to his ears is attributable to his diagnoses of learning disorder and anxiety.  ECF No. 14 at 6.  However, there is similarly no evidence in the record to support this proposed justification.  In the absence of a good reason for failing to obtain the hearing aids that were repeatedly recommended to him, the ALJ reasonably concluded that Plaintiff's failure to follow treatment recommendation undermined the extent of his alleged allegations.  Tr. 24.  This was a clear and convincing reason to give less weight to Plaintiff's symptom testimony.

### 2. *Conservative Treatment*

The ALJ found Plaintiff's symptom testimony was inconsistent with his record of receiving conservative treatment. Tr. 25. Evidence of "conservative treatment" is sufficient to discount a claimant's testimony regarding the severity of an impairment. *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) (citing *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995) (treating ailments with an over-the-counter pain medication is evidence of conservative treatment sufficient to discount a claimant's testimony regarding the severity of an impairment)); *see also Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (holding that the ALJ permissibly inferred that the claimant's "pain was not as all-disabling as he reported in light of the fact that he did not seek an aggressive treatment program" and "responded favorably to conservative treatment including physical therapy and the use of anti-inflammatory medication, a transcutaneous electrical nerve stimulation unit, and a lumbosacral corset").

Here, the ALJ noted that despite Plaintiff's allegations of disabling back pain, Plaintiff sought only chiropractic treatment for his back. Tr. 24-25; *compare* Tr. 60 (Plaintiff testified he experienced severe back pain every two to three weeks, could not sit or stand for very long, and could not bend over or twist his back) *with* Tr. 57 (Plaintiff testified that he sees the chiropractor when he throws

out his back but did not pursue other treatment, including medication or physical therapy).

Additionally, the ALJ noted that Plaintiff reported experiencing limitations from depression, anxiety, and panic attacks during the psychiatric consultative examination. Tr. 25; *see* Tr. 322. However, the ALJ noted that Plaintiff reported taking a prescribed anti-anxiety medication to help him sleep but otherwise reported not receiving other mental health treatment, including counseling or medication. Tr. 324. Plaintiff suggests that his failure to seek more intensive mental health treatment attributable to his history of learning disorders. ECF No. 14 at 5. However, Plaintiff identifies no evidence in the record to support this proposed justification for Plaintiff's conservative treatment. *Id.* The ALJ reasonably concluded that Plaintiff's record of conservative treatment was inconsistent with the level of impairment he alleged. Tr. 24-25. This was a clear and convincing reason to give less weight to Plaintiff's subjective symptom reporting.

*3. Inconsistent Symptom Reporting*

The ALJ found Plaintiff's symptom complaints were rendered less credible because Plaintiff inconsistently reported his symptoms. Tr. 24-25. In evaluating a claimant's symptom claims, an ALJ may consider the consistency of an individual's own statements made in connection with the disability-review process

with any other existing statements or conduct under other circumstances. *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996). Here, the ALJ noted that Plaintiff inconsistently reported his physical capacity. Tr. 24-25. During the hearing, Plaintiff testified he experienced severe back pain every two to three weeks, could not sit or stand for very long on a daily basis, and could not bend over or twist his back. Tr. 60. However, during the consultative examination, Plaintiff reported he was able to be on his feet for three hours at a time, able to sit for two hours at a time, and could lift 50 pounds once and 25 pounds more frequently. Tr. 314. In his function report, Plaintiff reported no limitation in sitting and reported being able to walk for miles without needing to rest. Tr. 218. The ALJ reasonably concluded that Plaintiff's differential reporting undermined the reliability of his subjective symptom testimony. Tr. 24-25.

Plaintiff challenges the ALJ's conclusion by noting that Plaintiff testified that his back pain worsened over time, which Plaintiff asserts explains his different subjective reports over time. ECF No. 14 at 9; *see* Tr. 60-61 (Plaintiff testified his back problems started with an accident in junior high and worsened over time); Tr. 313 (Plaintiff reported low back pain had been present for many years and was gradually getting worse). However, even where evidence is subject to more than one rational interpretation, the ALJ's conclusion will be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). The Court will only disturb the

ALJ's findings if they are not supported by substantial evidence. *Hill*, 698 F.3d at 1158. Here, the ALJ rationally concluded that the sharp decline in functioning Plaintiff reported between the consultative examination and Plaintiff's hearing testimony was attributable to inconsistent reporting rather than evidence of worsening symptoms supported by the record. Tr. 24-25. Because the ALJ's interpretation of the evidence is rational, the Court will not disturb it. *Hill*, 698 F.3d at 1158. This was a clear and convincing reason to give less weight to Plaintiff's subjective symptom complaints.

### 4. Improvement with Treatment

The ALJ found Plaintiff's symptom testimony was inconsistent with his record of improvement with treatment. Tr. 24-25. The effectiveness of treatment is a relevant factor in determining the severity of a claimant's symptoms. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) (determining that conditions effectively controlled with medication are not disabling for purposes of determining eligibility for benefits); *Tommasetti*, 533 F.3d at 1040 (recognizing that a favorable response to treatment can undermine a claimant's complaints of debilitating pain or other severe limitations).

Here, the ALJ noted that despite Plaintiff's alleged severe limitations from COPD, Plaintiff reported improvement in his breathing with use of his inhaler. Tr.

24; *see* Tr. 313, 317 (April 15, 2015: Plaintiff reported improved breathing when he uses his inhalers).  The ALJ also noted that despite alleging disabling back pain, Tr. 60, 64, Plaintiff reported substantial improvement with chiropractic treatment. Tr. 24-25; *see* Tr. 379 (May 31, 2016: Plaintiff reported a 95% improvement in back pain since beginning chiropractic treatment).  The ALJ reasonably concluded that this evidence of improvement was inconsistent with the disabling limitations Plaintiff alleged.  Tr. 24-25.  Furthermore, Plaintiff did not challenge this finding. ECF No. 14 at 3-12.  Thus, any challenge to this finding is waived.  *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (determining Court may decline to address on the merits issues not argued with specificity); *Kim v. Kang*, 154 F.3d 996, 1000 (9th Cir. 1998) (the Court may not consider on appeal issues not "specifically and distinctly argued" in the party's opening brief). Plaintiff's improvement with treatment provided a clear and convincing, and unchallenged, reason to give less weight to Plaintiff's subjective symptom testimony.

    *5.  Daily Activities*

    The ALJ found Plaintiff's symptom complaints were inconsistent with his daily activities.  Tr. 25-26.  The ALJ may consider a claimant's activities that undermine reported symptoms.  *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).  If a claimant can spend a substantial part of the day engaged in pursuits

involving the performance of exertional or non-exertional functions, the ALJ may find these activities inconsistent with the reported disabling symptoms. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989); *Molina*, 674 F.3d at 1113. "While a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discount a claimant's symptom claims when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting" or when activities "contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1112-13. Additionally, working with an impairment supports a conclusion that the impairment is not disabling. *See Drouin v. Sullivan*, 966 F.2d 1255, 1258 (9th Cir. 1992); *see also Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009) (seeking work despite impairment supports inference that impairment is not disabling).

The ALJ noted Plaintiff testified that his temper prevented him from working. Tr. 26; *see* Tr. 31-62, 321. However, the ALJ observed Plaintiff reported maintaining good relationships with family, friends, and coworkers. Tr. 21, 26; *see* Tr. 49 (Plaintiff reported going hunting with his friend); Tr. 320-22 (Plaintiff reported socializing regularly with his brother, having a good relationship with his wife, getting along well with coworkers and supervisors, and socializing weekly with friends). The ALJ also noted that Plaintiff reported severe limitations from back pain. Tr. 24. However, the ALJ observed Plaintiff reported performing

activities like loading bales of hay into his truck and repairing fences.  Tr. 25; *see* Tr. 313.  Additionally, the ALJ noted Plaintiff testified he experienced life-long memory and attention issues.  Tr. 25; *see* Tr. 55 (Plaintiff testified he had short-term memory loss since birth).  However, the ALJ observed Plaintiff had been able to perform semi-skilled work in the past, despite the presence of his memory loss.[3]  Tr. 25; *see* Tr. 229, 233-34.  The ALJ reasonably concluded that these activities were inconsistent with the level of impairment that Plaintiff alleged.  Tr. 25-26.

The ALJ also noted Plaintiff reported being the caretaker for his seven-year-old grandson.  Tr. 26; *see* Tr. 52-53 (Plaintiff testified that childcare duties fell to him because his wife works full-time).  Plaintiff challenges this finding for not identifying sufficiently specific childcare activities.  ECF No. 14 at 8-9.  Even if this specific finding was not sufficiently supported, the ALJ identified other substantial evidence in support of the conclusion that Plaintiff's activities were inconsistent with the level of impairment he alleged.  *See Carmickle*, 533 F.3d at

---

[3] Plaintiff argues that this conclusion is inconsistent with the ALJ's RFC formulation, which precluded Plaintiff's return to past work.  ECF No. 14 at 8.  The Court interprets the ALJ's conclusion as finding Plaintiff's report about the long-standing nature of memory impairment to be inconsistent with his past activities, rather than a conclusion regarding his current mental limitations.

1162-63; *Molina*, 674 F.3d at 1115 ("[S]everal of our cases have held that an

ALJ's error was harmless where the ALJ provided one or more invalid reasons for

disbelieving a claimant's testimony, but also provided valid reasons that were

supported by the record."). Plaintiff's other daily activities provided clear and

convincing reasons to give less weight to his symptom testimony.

### 6. Inconsistent Medical Evidence

The ALJ found Plaintiff's symptom testimony was inconsistent with the

medical evidence. Tr. 24-25. An ALJ may not discredit a claimant's symptom

testimony and deny benefits solely because the degree of the symptoms alleged is

not supported by objective medical evidence. *Rollins*, 261 F.3d at 857; *Bunnell v.*

*Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Fair*, 885 F.2d at 601; *Burch*, 400

F.3d at 680. However, the objective medical evidence is a relevant factor, along

with the medical source's information about the claimant's pain or other

symptoms, in determining the severity of a claimant's symptoms and their

disabling effects. *Rollins*, 261 F.3d at 857; 20 C.F.R. §§ 404.1529(c)(2),

416.929(c)(2).

Here, the ALJ considered Plaintiff's allegations surrounding his different impairments.[4] Tr. 24-25. First, the ALJ noted that Plaintiff alleged severe limitations from COPD. Tr. 24; *see* Tr. 313. However, the ALJ observed that objective imaging and physical examinations of Plaintiff's chest revealed normal to mild findings. Tr. 24; *see* Tr. 280 (November 21, 2013: chest imaging showed no radiographic abnormalities); Tr. 311, 315 (April 15, 2015: chest imaging showed findings within normal limits and no radiographic abnormalities; physical examination revealed increased AP diameter, prolonged expiratory phase, and scattered rhonchi heard in all lung fields); Tr. 405 (February 8, 2017: chest imaging showed hyperexpanded lungs consistent with COPD but no acute finding or significant change).

Second, the ALJ considered Plaintiff's allegations that he was unable to work due to hearing loss. Tr. 24; *see* Tr. 56 (Plaintiff testified he could not work due to hearing loss); Tr. 295 (Plaintiff reported having difficulties keeping a job due to hearing loss). However, the ALJ found that although Plaintiff's treatment notes documented hearing loss, they did not corroborate the level of impairment

---

[4] Contrary to Plaintiff's conclusory assertion at ECF No. 14 at 11, the ALJ identified specific allegations in Plaintiff's symptom reporting before discussing the lack of supporting medical evidence for that claim. Tr. 24-25.

Plaintiff alleged.  Tr. 25; *see* Tr. 295, 303 (January 15, 2015: audiogram showed significant sensorineural hearing loss bilaterally but Plaintiff retained 88% speech discrimination bilaterally); Tr. 315 (April 15, 2015: examination showed normal hearing); Tr. 323 (April 28, 2015: consultative examiner reported having to repeat some questions when Plaintiff did not hear them); Tr. 343 (February 9, 2016: hearing essentially unchanged since January 2015 audiogram).

Third, the ALJ noted Plaintiff reported significant limitations due to back pain.  Tr. 24; *see* Tr. 60 (Plaintiff testified he could not sit or stand for very long and could not bend over or twist his back when experiencing back pain); Tr. 64 (Plaintiff testified on an average day he could stand or sit for 15-20 minutes, then he would need to adjust himself).  However, the ALJ observed that the objective evidence of Plaintiff's back pain was mild.  Tr. 25; *see* Tr. 312 (April 15, 2015: imaging showed slight degenerative disc disease at L3-4 and L4-5 but impression was age-appropriate, slight degenerative changes); Tr. 313, 316 (April 15, 2015: Plaintiff did not describe sciatic pain or report history of numbness or weakness in either leg; physical examination largely normal with normal range of motion, negative straight leg raise bilaterally, minimal spinal tenderness to percussion, no paravertebral muscle spasm, and negative Waddell's signs).

Fourth, the ALJ noted Plaintiff reported longstanding limitations due to short term memory loss.  Tr. 25; *see* Tr. 55, 57 (Plaintiff alleged limitations from

memory loss and having short-term memory loss since birth).  However, the ALJ observed that the level of impairment Plaintiff claimed was inconsistent with Plaintiff's performance on the mental status examination, which showed some memory impairment but also noted Plaintiff had smoked marijuana on the morning of the examination.  Tr. 25; *see* Tr. 323-24 (April 28, 2015: Plaintiff reported smoking marijuana on the morning of the consultative examination; memory for past information was in low average range; memory for recent information was poor; memory for immediate information ranked in the 16th percentile; Plaintiff was able to recall both presentations of five digits forward and both presentations of four digits backward; Plaintiff was able to correctly identify the states surrounding Washington and five large American cities).  The ALJ reasonably concluded that the objective evidence was inconsistent with Plaintiff's subjective symptom reports.  Tr. 24-25.

Plaintiff challenges the ALJ's findings by arguing for a different interpretation of the medical evidence.  ECF No. 14 at 11.  However, the Court may not reverse the ALJ's decision based on Plaintiff's disagreement with the ALJ's interpretation of the record.  *See Tommasetti*, 533 F.3d at 1038 ("[W]hen the evidence is susceptible to more than one rational interpretation" the court will not reverse the ALJ's decision).  Here, the ALJ's finding that specific aspects of Plaintiff's symptom testimony were inconsistent with the objective medical

ORDER - 23

evidence was based on a rational interpretation of the evidence and is supported by substantial evidence. Tr. 24-25. The inconsistencies between Plaintiff's symptom allegations and the objective evidence, coupled with the other reasons articulated, provided clear and convincing reasons to give less weight to Plaintiff's subjective symptom testimony.

### 7. *ALJ's Observations*

The ALJ found Plaintiff's symptom testimony was inconsistent with the ALJ's observations at the hearing. Tr. 24. An ALJ's reliance on personal observations of a claimant at the hearing "has been condemned as 'sit and squirm' jurisprudence." *Perminter v. Heckler*, 765 F.2d 870, 872 (9th Cir. 1985) (citation omitted). The practice has generally been met with disapproval and may not form the sole basis for discounting a claimant's symptom claims. *Orn*, 495 F.3d at 639.

Here, the ALJ found Plaintiff "did not demonstrate any difficulties hearing or speaking during the hearing." Tr. 24. Plaintiff challenges the ALJ's characterization of events. ECF No. 14 at 10-11. However, the ALJ's observations of Plaintiff did not form the sole basis for her determination. Tr. 24-26. Furthermore, even if this finding is error, the error would be harmless because, as discussed *supra*, the ALJ listed additional reasons, supported by substantial evidence, for discrediting Plaintiff's symptom complaints. *See Carmickle*, 533 F.3d at 1162-63; *Molina*, 674 F.3d at 1115 ("[S]everal of our cases have held that

an ALJ's error was harmless where the ALJ provided one or more invalid reasons for disbelieving a claimant's testimony, but also provided valid reasons that were supported by the record."); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004) (holding that any error the ALJ committed in asserting one impermissible reason for claimant's lack of credibility did not negate the validity of the ALJ's ultimate conclusion that the claimant's testimony was not credible). Plaintiff is not entitled to remand on this issue.

**B. Lay Opinion Evidence**

Plaintiff challenges the ALJ's evaluation of lay opinion evidence from Plaintiff's wife, De Etta W.[5]  ECF No. 14 at 18-19.

An ALJ must consider the statement of lay witnesses in determining whether a claimant is disabled.  *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006).  Lay witness evidence cannot establish the existence of medically determinable impairments, but lay witness evidence is "competent evidence" as to "how an impairment affects [a claimant's] ability to work."  *Id.*; 20 C.F.R. §§ 404.1513(a)(4), 416.913(a)(4); *see also Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993) ("[F]riends and family members in a position to observe a claimant's symptoms and daily activities are competent to testify as to her

_____

[5] Plaintiff's wife's last name is omitted to protect Plaintiff's privacy.

condition."). If a lay witness statement is rejected, the ALJ "'must give reasons that are germane to each witness.'" *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996) (citing *Dodrill*, 12 F.3d at 919).

Mrs. W. submitted a function report on March 2, 2015, Tr. 221-28, and a letter on December 27, 2016, Tr. 267, describing Plaintiff's limitations from hearing loss and social impairments. The ALJ considered this evidence and gave Mrs. W.'s opinions little weight. Tr. 26. Because Mrs. W. is a lay witness, the ALJ was required to give germane reasons to discount her opinion. *Nguyen*, 100 F.3d at 1467.

The ALJ found Mrs. W's statements were "substantially similar" to Plaintiff's subjective complaints. Tr. 26. Where the ALJ gives clear and convincing reasons to reject a claimant's testimony, and where a lay witness's testimony is similar to the claimant's subjective complaints, the reasons given to reject the claimant's testimony are also germane reasons to reject the lay witness testimony. *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009); *see also Molina*, 674 F.3d at 1114 ("[I]f the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness"). Here, many of the answers on Mrs. W.'s function report are nearly identical to Plaintiff's function report. *Compare* Tr. 213-20 *with* Tr. 221-28. Indeed, one of Mrs. W.'s responses refers to

herself in the third person, mirroring the language Plaintiff used in his own response to the same question. *Compare* Tr. 214 *with* Tr. 222. The ALJ reasonably concluded that Mrs. W.'s statements were substantially similar to Plaintiff's complaints. Therefore, the reasons the ALJ gave to give less weight to Plaintiff's symptom claims, discussed *supra*, are also germane reasons to give less weight to Mrs. W.'s statements.

### 1. Inconsistent Medical Evidence

The ALJ found Mrs. W's opinion, like Plaintiff's claims, was inconsistent with the objective medical evidence. Tr. 26. Inconsistency with the medical evidence is a germane reason for rejecting lay witness testimony. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005); *Lewis v. Apfel*, 236 F.3d 503, 511-12 (9th Cir. 2001). Although Mrs. W. opined Plaintiff was significantly limited due to hearing loss, the ALJ observed, as discussed *supra*, the objective medical evidence was not consistent with the level of severe limitation alleged. Tr. 26; *see* Tr. 295, 303 (January 15, 2015: audiogram showed significant sensorineural hearing loss bilaterally but Plaintiff retained 88% speech discrimination bilaterally); Tr. 315 (April 15, 2015: examination showed normal hearing); Tr. 323 (April 28, 2015: consultative examiner reported having to repeat some questions when Plaintiff did not hear them); Tr. 343 (February 9, 2016: hearing essentially

unchanged since January 2015 audiogram). The ALJ reasonably concluded this evidence was inconsistent with the level of impairment Mrs. W. alleged. Tr. 26.

Plaintiff asserts the ALJ erred in making this finding, arguing that inconsistency with the medical evidence is not a legally sufficient reason to reject lay opinion evidence. ECF No. 14 at 19 (citing *Diedrich v. Berryhill*, 874 F.3d 634, 640 (9th Cir. 2017)). "An ALJ may reject lay testimony if it is *inconsistent* with medical evidence, but not if it is simply *unsupported* by medical evidence." *Carlos L. v. Berryhill*, No. ED CV 17-122-SP, 2019 WL 1433723, at *11 (C.D. Cal. March 28, 2019) (emphasis in original); *compare Lewis*, 236 F.3d at 511 ("One reason for which an ALJ may discount lay testimony is that it conflicts with medical evidence.") *and Bayliss*, 427 F.3d at 1218 ("Inconsistency with medical evidence is one [germane] reason [to discredit the testimony of lay witnesses].") *with Bruce v. Astrue*, 557 F.3d 1113, 1116 (9th Cir. 2009) ("Nor under our law could the ALJ discredit her lay testimony as not supported by medical evidence in the record.") *and Diedrich*, 874 F.3d at 640 ("[A] lack of support from the 'overall medical evidence' is also not a proper basis for disregarding [the lay witness'] observations") (internal citation omitted). Here, the ALJ concluded that Mrs. W.'s opinion was inconsistent with the medical evidence. Tr. 26. For the reasons identified *supra*, this is a reasonable interpretation of the evidence. This was a germane reason to give Mrs. W.'s opinion less weight.

ORDER - 28

## 2. Longitudinal Treatment History

The ALJ found Mrs. W.'s opinion, like Plaintiff's symptom claims, was inconsistent with Plaintiff's longitudinal treatment history. Tr. 26. Mrs. W.'s opinion discusses Plaintiff's limitations from hearing loss. Tr. 221-28, 267. As discussed *supra*, the ALJ found Plaintiff's allegations about limitations from hearing loss were less credible because of Plaintiff's failure to follow treatment recommendations to obtain hearing aids. Tr. 24. A claimant's failure to follow treatment recommendations can provide germane reason to discount lay evidence. *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006). Although Mrs. W. opined Plaintiff suffered significant limitations from hearing loss, Tr. 221-28, 267, the ALJ observed Plaintiff refused to obtain hearing aids despite repeated recommendations to do so and that Plaintiff did not offer a good reason to fail to seek this prescribed treatment. Tr. 24; *see* Tr. 295 (January 15, 2015: hearing aid amplification recommended by treating ENT specialist); Tr. 330 (February 9, 2016: treating ENT specialist opined bilateral hearing aids would be "the best solution for his hearing" and "had a long discussion about the need for amplification" with Plaintiff); Tr. 314 (Plaintiff reported being told hearing aids will help him but declining to try them because he is afraid they will damage his ears). The ALJ reasonably concluded that Plaintiff's treatment history specific to

his hearing impairment was inconsistent with Mrs. W.'s opinion. Tr. 26. This was a germane reason to give less weight to Mrs. W.'s opinion.

### 3. Daily Activities

The ALJ found Mrs. W.'s opinion, like Plaintiff's symptom claims, was inconsistent with Plaintiff's daily activities. Tr. 26. Inconsistency with a claimant's daily activities is a germane reason to reject lay testimony. *Carmickle*, 533 F.3d at 1163-64; *Lewis*, 236 F.3d at 512. Mrs. W.'s function report reiterates Plaintiff's reports that his temper prevented him from working. Tr. 227. However, the ALJ observed Plaintiff reported social activities and maintaining good relationships with family, friends, and coworkers. Tr. 21, 26; *see* Tr. 49 (Plaintiff reported going hunting with his friend); Tr. 320-22 (Plaintiff reported socializing regularly with his brother, having a good relationship with his wife, getting along well with coworkers and supervisors, and socializing weekly with friends). The ALJ reasonably concluded that Mrs. W.'s opinion was inconsistent with Plaintiff's activities. Tr. 26. This was a germane reason to give her opinion less weight.

## C. Medical Opinion Evidence

Plaintiff challenges the ALJ's consideration of the medical opinions of Guillermo Rubio, M.D.; Leslie Postovit, Ph.D.; and John Robinson, Ph.D. ECF No. 14 at 13-18.

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant [but who review the claimant's file] (nonexamining [or reviewing] physicians)." *Holohan v. Massanari,* 246 F.3d 1195, 1201-02 (9th Cir. 2001) (citations omitted). Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's. *Id.* at 1202. "In addition, the regulations give more weight to opinions that are explained than to those that are not, and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists." *Id.* (citations omitted).

If a treating or examining physician's opinion is uncontradicted, the ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss,* 427 F.3d at 1216. "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray*, 554 F.3d at 1228 (internal quotation marks and brackets omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester*, 81 F.3d at 830-

831).  The opinion of a nonexamining physician may serve as substantial evidence if it is supported by other independent evidence in the record.  *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).

### 1. Dr. Rubio

Dr. Rubio reviewed the record on August 11, 2015 and opined Plaintiff could occasionally lift and/or carry 50 pounds; could frequently lift and/or carry 25 pounds; could stand and/or walk for a total of six hours in an eight-hour workday; could sit for a total of six hours in an eight-hour workday; had no limitations in pushing or pulling; could frequently climb ramps and stairs; could occasionally climb ladders, ropes, and scaffolds; had no limitation in balance; could frequently stoop, kneel, crouch, and crawl; that Plaintiff must wear hearing aids and avoid concentrated noise exposure; that Plaintiff must avoid concentrated exposure to vibration, fumes, odors, dusts, gases, and poor ventilation; and that Plaintiff could have unlimited exposure to hazards.  Tr. 100-02.  The ALJ gave this opinion partial weight.  Tr. 26.  Because Dr. Rubio's opinion was contradicted by Dr. Drenguis, Tr. 313-18, the ALJ was required to provide specific and legitimate reason to reject Dr. Rubio's opinion.  *Bayliss*, 427 F.3d at 1216.

The ALJ gave greater weight to Dr. Drenguis' opinion than to Dr. Rubio's opinion because Dr. Rubio's opinion was inconsistent with Dr. Drenguis' opinion and examination findings.  Tr. 26.  Relevant factors when evaluating a medical

opinion include the amount of relevant evidence that supports the opinion and the consistency of the medical opinion with the record as a whole. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1042 (9th Cir. 2007); *Orn*, 495 F.3d at 631. Here, Dr. Drenguis performed a physical examination and documented some abnormal results on hearing testing, but Dr. Drenguis did not opine Plaintiff had limitations in working around excessive noise. Tr. 315, 317-18. The ALJ reasonably concluded that Dr. Rubio's opinion was inconsistent with this other evidence in the record. Tr. 26. This was a specific and legitimate reason to give Dr. Rubio's opinion less weight.

Plaintiff challenges the ALJ's interpretation of the evidence and argues Dr. Rubio's opinion should have been fully credited and incorporated into the RFC in a specific way. ECF No. 14 at 13-15. Plaintiff essentially invites this Court to reweigh the evidence. The Court "may neither reweigh the evidence nor substitute its judgment for that of the Commissioner." *Blacktongue v. Berryhill*, 229 F. Supp. 3d 1216, 1218 (W.D. Wash. 2017) (citing *Thomas*, 278 F.3d at 954). "[T]he ALJ is responsible for translating and incorporating clinical findings into a succinct RFC." *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015). Where evidence is subject to more than one rational interpretation, the ALJ's conclusion will be upheld. *Burch*, 400 F.3d at 679. The Court will only disturb the ALJ's findings if they are not supported by substantial evidence. *Hill*, 698 F.3d

at 1158.  As discussed *supra*, the ALJ's interpretation of the evidence was reasonable.  Plaintiff is not entitled to remand on these grounds.

### 2. *Dr. Postovit and Dr. Robinson*

Dr. Postovit reviewed the record on May 14, 2015, and opined Plaintiff had moderate limitation in his ability to understand and remember detailed instructions; that Plaintiff retained the mental capacity to concentrate on, understand, and remember routine, repetitive tasks; that Plaintiff had moderate limitation in his ability to carry out detailed instructions; that Plaintiff had moderate limitation in his ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; that Plaintiff had moderate limitation in his ability to work in coordination with or in proximity to others without being distracted by them; that Plaintiff would have occasional difficulties in maintaining concentration, persistence, and pace when symptomatic but that he remained capable of simple or complex tasks with reasonable concentration, persistence, and pace, attending work within customary tolerances, working within a routine, and completing a normal workday and workweek; that Plaintiff had moderate limitation in his ability to interact appropriately with the general public; that Plaintiff had moderate limitation in his ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes; and that Plaintiff required a setting with little or no public contact and where contact with coworkers

is superficial and infrequent.  Tr. 88-90.  Dr. Robinson reviewed the record on August 3, 2015 and rendered the same opinions.  Tr. 102-04.  The ALJ gave both opinions significant weight.  Tr. 27.

Plaintiff challenges the ALJ's evaluation of Dr. Postovit's and Dr. Robinson's opinions by asserting that the way in which the ALJ incorporated these opinions into the RFC actually constitutes a rejection of the opinions.  ECF No. 14 at 15-18.  Specifically, Plaintiff argues that the ALJ's finding that Plaintiff was capable of performing simple tasks on a regular and continuing basis is actually a rejection of Dr. Postovit's and Dr. Robinson's opinion that Plaintiff had occasional difficulties in maintaining concentration, persistence, and pace.  *Id.* at 15-16.  However, both Dr. Postovit and Dr. Robinson opined that despite Plaintiff's occasional difficulties in maintaining concentration, persistence, and pace, Plaintiff remained capable of performing simple or complex tasks with reasonable concentration, persistence, and pace.  Tr. 90, 103.  The ALJ credited this evidence and incorporated it into the RFC by limiting Plaintiff to performing unskilled, routine, and repetitive work.  Tr. 22.

"[T]he ALJ is responsible for translating and incorporating clinical findings into a succinct RFC."  *Rounds*, 807 F.3d at 1006.  To the extent the evidence could be interpreted differently, it is the role of the ALJ to resolve conflicts and ambiguity in the evidence.  *See Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d

595, 599-600 (9th Cir. 1999). Where evidence is subject to more than one rational interpretation, the ALJ's conclusion will be upheld. *Burch*, 400 F.3d at 679. The Court will only disturb the ALJ's findings if they are not supported by substantial evidence. *Hill*, 698 F.3d at 1158. Plaintiff challenges the ALJ's interpretation of the evidence, arguing that the ALJ erroneously rejected Dr. Postovit's and Dr. Robinsons' opinions based on an incorrect interpretation of the evidence. However, the ALJ actually credited these opinions and reasonably incorporated their findings into the RFC. Tr. 22, 27. Plaintiff is not entitled to remand on these grounds.

## CONCLUSION

Having reviewed the record and the ALJ's findings, this court concludes the ALJ's decision is supported by substantial evidence and free of harmful legal error. Accordingly, **IT IS HEREBY ORDERED**:

1. The District Court Executive is directed to **substitute Andrew M. Saul as the Defendant and update the docket sheet**.

2. Plaintiff's Motion for Summary Judgment, ECF No. 14, is **DENIED**.

3. Defendant's Motion for Summary Judgment, ECF No. 16, is **GRANTED**.

4. The Court enter **JUDGMENT** in favor of Defendant.

The District Court Executive is directed to file this Order, provide copies to counsel, and **CLOSE THE FILE.**

DATED July 29, 2019.

_s/Mary K. Dimke_
MARY K. DIMKE
UNITED STATES MAGISTRATE JUDGE

ORDER - 37